IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CRYSTAL SNOWDEN,<br><br>      Plaintiff,<br><br>vs.<br><br>ORIENTAL TRADING COMPANY, INC.,<br><br>      Defendant. | 8:22CV435<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on what has been docketed as Plaintiff's Motion to Extend filed on June 13, 2023. Filing 11. Plaintiff asks for an extension of time of the June 15, 2023, deadline to amend her complaint. However, Plaintiff timely filed an Amended Complaint on June 15, 2023. Filing 12. Accordingly, Plaintiff's Motion to Extend will be denied as moot, and the court now reviews Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2).

## I. BACKGROUND

Plaintiff filed her Complaint on December 16, 2022, against her former employer Oriental Trading Company, Inc. ("Oriental Trading") and an individual named "Marc" asserting claims of race-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101-1126. Filing 1. The court granted Plaintiff leave to proceed in forma pauperis and conducted an initial review of her Complaint on May 16, 2023 (the "initial review order"). The Court determined Plaintiff's Complaint failed to state a claim for discrimination or retaliation under Title VII and the NFEPA but gave Plaintiff "leave to file an amended complaint that sufficiently alleges an employment discrimination

claim upon which relief may be granted and specifies the relief she seeks." Filing 9 at 7. As indicated above, Plaintiff filed her Amended Complaint on June 15, 2023. Filing 12.

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff names only Oriental Trading as Defendant and again utilized the Form Pro Se 1 Complaint for a Civil Case for her claims. Plaintiff seeks $300,000 in damages for discrimination and retaliation, $100,000 for emotional distress, and $1,000,000 for wrongful termination as Plaintiff "was assaulted then terminated and Oriental Trading downplayed the whole situation like nothing happened." Filing 12 at 4–5. The court understands Plaintiff's Amended Complaint as attempting to raise the same racial discrimination and retaliation claims that she raised in her original Complaint, as well as a hostile environment harassment claim. Plaintiff, however, did not include with her Amended Complaint copies of her Determination and Notice of Rights or the Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") and the Nebraska Equal Opportunity Commission ("NEOC"), which were attached to her original Complaint. *See* Filing 1 at 7–9. For purposes of this initial review, though, the court will consider the Amended Complaint as supplemental to the Complaint and, thus, considers the EEOC and NEOC documents attached to Plaintiff's Complaint in assessing the claims raised in the Amended Complaint. *See* NECivR 15.1(b) (court may consider pro se litigant's amended pleading as supplemental to, rather than as superseding, the original pleading).

In her "Statement of Claim," Plaintiff refers to papers attached to her Amended Complaint in which she more specifically describes what happened during her employment with Oriental Trading. Plaintiff alleges she is African American and was employed by Oriental Trading from November 10, 2021, to December 8, 2021. After two days of training, Plaintiff went to the warehouse where Dawn, a Caucasian woman, walked by, and Plaintiff's trainer, Jackie,

2

who is African American, warned Plaintiff to "watch her," referring to Dawn. Filing 12 at 7. In response to Plaintiff's question asking if Dawn is racist, "Jackie didn't verbally say anything, [but] her facial expression said yes," and Jackie reiterated her warning to "watch her." Id.

Plaintiff spoke to Dawn for the first time on November 15, 2021, and their "conversation was going well until she told [Plaintiff] she was part of Hell's Angels (a racist motorcycle club that has only Caucasian members). [Dawn] also mentioned how she has people to watch other people for her," which Plaintiff found strange, but "didn't think anything of it at the time." Id. (capitalization corrected). Also on November 15, 2021, Plaintiff "noticed a Caucasian man following and watching/harassing [her] and made [her] very uncomfortable" while Plaintiff was filling an order. Id. at 8 (capitalization corrected). After Plaintiff completed her order, Plaintiff approached Dawn at the podium for her next order. Dawn asked Plaintiff what she was using to open boxes, and Plaintiff indicated "'a razor blade' and showed it to [Dawn]." Id. Dawn told Plaintiff she "can't use that" and when Plaintiff inquired why not, Dawn responded in a hostile manner, "because I said you couldn't, you need a razor blade." Id. Plaintiff explained that Oriental Trading had not supplied her with anything to open boxes, she had previously used a writing pen to open boxes which slowed her progress, and when she asked for a box cutter, she was told to provide her own. After Plaintiff walked away from this encounter with Dawn, a Caucasian woman warned Plaintiff to "watch [Dawn], she got my black friend fired last year." Id. Plaintiff alleges Dawn "harassed [her] two more times after that," and, on one occasion, Dawn denied Plaintiff's over time request, which Plaintiff had submitted on time. Id. at 9. Plaintiff did not see Dawn "being hostile to any of the other employees, just [Plaintiff]." Id.

Plaintiff describes another incident on November 23, 2021, in which another African American female employee, who Plaintiff did not know, approached Plaintiff and informed her that their Caucasian supervisor, Dorithy, asked the woman about Plaintiff. The woman expressed that she did

not know why Dorithy was asking her about Plaintiff, but told Plaintiff, "I don't have nothing to do with what you and Dawn have going on, keep me out of it." *Id*. Plaintiff alleges "Dorithy only ask[ed] [the other employee] about [Plaintiff] . . . because she's black. Thinking that we know each other because we're both black." *Id*. Plaintiff spoke with her co-worker and two other Caucasian employees about Dorithy's actions, who indicated Dorithy is "not suppose[d] to do that." *Id*. at 10. Plaintiff alleges that "[b]y this time [she] had contacted the NEOC because it was too much for [her] in that little time [she] was there." *Id*.

On December 8, 2021, Plaintiff was walking down an aisle after completing an order when "Marc, the one that Dawn had following me[,] began to throw full boxes on the floor to block [Plaintiff's] path." *Id*. Plaintiff kicked the boxes out of the way and Marc "then got violent by growling at [Plaintiff] and rushed [her] like a football player." *Id*. If Plaintiff had not been holding on to her cart, she "would've been on the floor after he attacked [her]." *Id*. "Marc never said anything to [Plaintiff], but [she] could tell he didn't like [her]." *Id*. Plaintiff was "screaming and crying and in complete shock" after the attack. *Id*. Dorithy approached Plaintiff, telling her to be quiet, and Plaintiff told Dorithy that Marc attacked her. Dorithy asked if anyone saw what happened, to which everyone replied they had not. Dorithy then had Plaintiff go with her to a different part of the warehouse where she asked Plaintiff what happened, and Plaintiff demonstrated what Marc did without touching Dorithy. Dorithy then yelled at Plaintiff "saying why'd you do that, you don't have on a mask," to which Plaintiff responded, "that's what [Marc] did to me and he didn't have a mask either." *Id*. at 11. Dorithy then obtained an incident report for Plaintiff to complete and told Plaintiff she could go home. Plaintiff asked if Mark is going to be fired, to which Dorithy said, "he's been a long time employee." *Id*. Plaintiff finished her incident report and then left. Though not clearly specified, Plaintiff was fired shortly after this December 8, 2021, incident. *See Id*. at 15; *see also* Filing 1 at 8.

4

## III. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian,* 760 F.3d at 849 (internal quotation marks and citations omitted).

## IV. DISCUSSION OF CLAIMS

Liberally construed, Plaintiff alleges discrimination, harassment, and retaliation claims on the basis of race under Title VII and the NFEPA. As stated in the court's initial review order, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

5

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NFEPA is patterned after Title VII, and the same analysis applies. *See Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017) ("We analyze discrimination claims under the NFEPA by applying the same analysis for discrimination claims under Title VII."). In the initial review order, the court set out the pleading standards for discrimination and retaliation claims and applies those same standards here without repeating them. *See* Filing 9 at 5–7. Additional standards relevant to Plaintiff's harassment claim will be set forth below.

**A. Discrimination**

In the initial review order, the court could not reasonably infer from the Complaint's allegations that circumstances existed that gave rise to an inference of discrimination based on race. Though Plaintiff provides more detail in her Amended Complaint regarding her employment at Oriental Trading and her interactions with Dawn and Marc, the Court finds, after careful review, that the facts alleged fail to give rise to an inference that her termination was based on Plaintiff's race in violation of Title VII.

Plaintiff still alleges no facts suggesting someone outside of her protected class was treated more favorably and was similarly situated. While Plaintiff alleges some facts suggesting Dawn's mistreatment of Plaintiff may have been racially motivated, Plaintiff alleged in her Charge of Discrimination that Dawn's mistreatment of Plaintiff ended on or about November 23, 2021, when Plaintiff learned that her supervisor Dorithy had spoken to another African American employee about Plaintiff. Filing 1 at 8; Filing 12 at 9. Moreover, there is no suggestion that Dawn played any sort of decision-making role in Plaintiff's termination. Thus, the court cannot infer any type of connection between Dawn's harassment of Plaintiff and her termination on or about December 8, 2021, from the facts alleged. Rather, Plaintiff's termination is alleged to be immediately precipitated by Marc's

6

assault on Plaintiff. While the alleged assault would certainly have been wrongful, Plaintiff has alleged no facts from which the Court could reasonably infer that Marc's alleged behavior was linked to Plaintiff's race. As such, Plaintiff fails to state a discrimination claim upon which relief may be granted.

### B. Hostile Environment Harassment

Plaintiff's claims concerning her mistreatment while employed at Oriental Trading Company are more properly construed as a hostile environment harassment claim. "Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (internal quotation marks and citation omitted). To succeed on such a claim under Title VII, Plaintiff must establish that "(1) she is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and her protected-group status; (4) the harassment affected a term, condition, or privilege of her employment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt and effective remedial action." *Id.* at 805-06 (internal quotation marks and citation omitted). "To determine whether the harassment affected a term, condition, or privilege of [Plaintiff's] employment, we must consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Plaintiff's] job performance." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 922 (8th Cir. 2018) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015)) (internal quotation marks and alterations omitted).

Here, Plaintiff alleges Dawn told Plaintiff she belonged to the Hell's Angels, "a racist motorcycle club that has only Caucasian members," and

7

other employees implied that Dawn was racist and warned Plaintiff to "watch her." Filing 12 at 7. Dawn had Marc follow and watch Plaintiff on November 15, 2021, while Plaintiff filled an order which made Plaintiff "very uncomfortable." Id. at 8. Dawn was also hostile to Plaintiff on November 15, 2021, when discussing what tool Plaintiff could use to open boxes and denied one of Plaintiff's overtime requests, even though it was timely submitted. There was also the December 8, 2021, incident where Marc allegedly assaulted Plaintiff, and Plaintiff alleges she knew Marc did not like her. Id. at 10.

Even assuming the harassment Plaintiff describes is based on her race, the facts alleged are insufficient to show the harassment was severe enough to constitute a hostile work environment. Conduct affecting a term, condition, or privilege of employment "requires that '[t]he harassment . . . be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe [his] working conditions have been altered.'" Moses, 894 F.3d at 922 (quoting Sandoval v. Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 801 (8th Cir. 2009)) (internal quotation marks omitted). "The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." Jackman, 728 F.3d at 806 (internal quotation marks and citation omitted). "[M]erely rude or unpleasant conduct are insufficient to affect the terms and conditions of employment." Moses, 894 F.3d at 922–23 (quoting Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 420 (8th Cir. 2010)) (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. at 923 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted).

Dawn's and Marc's conduct as alleged was certainly unprofessional, inappropriate, and aggressive, but the facts alleged fail to suggest the kind of

8

severe and pervasive conduct required to support a hostile environment claim. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (finding racial remarks made directly to plaintiff once a month for two years by owner and operators was insufficient to render workplace objectively hostile); *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (reversing denial of summary judgment and "conclud[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around plaintiff "on a weekly, if not daily, basis"); *Scusa v. Nestle USA Co.*, 181 F.3d 958, 967 (8th Cir. 1999) (nine incidents of unpleasant conduct and offensive comments, considered "either individually or collectively," were not "severe or pervasive enough so as to alter a term, condition, or privilege of [ ] employment."); *Ways v. City of Lincoln*, 871 F.2d 750, 754–55 (8th Cir. 1989) (upholding finding of hostile work environment where plaintiff identified approximately 50 examples of racial harassment); *see also Davidson v. State Collection Serv., Inc.*, 824 F. App'x 424, 425–27 (7th Cir. 2020) (no reasonable jury could find that supervisor's handful of offensive comments, including comment that supervisor's "boyfriend is a member of the Hell's Angels motorcycle club and does not like Black people," during plaintiff's two years of employment rose to the level of severe or pervasive harassment that altered her work environment).

**C. Retaliation**

In the initial review order, the court concluded that Plaintiff failed to allege sufficient facts to demonstrate that she engaged in activity protected under Title VII based on her reporting to Oriental Trading about Dawn's harassment and the incident involving Marc. Filing 9 at 6–7. However, Plaintiff's Amended Complaint now includes an allegation that Plaintiff "contacted the NEOC" on or about November 23, 2021, after learning that Dorithy had talked to another African American, female employee about Plaintiff. Filing 12 at 10. The court cannot infer that Plaintiff's contact involved the filing of a discrimination charge as Plaintiff's Charge of

9

Discrimination attached to her Complaint was filed with the NEOC on February 23, 2022. Filing 1 at 8. Liberally construed, however, Plaintiff's action of contacting the NEOC is sufficient at the initial review stage to allege protected activity under Title VII. *See Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000) ("Title VII's prohibition against retaliatory discrimination protects activities ranging from filing a complaint to expressing a belief that the employer has engaged in discriminatory practices."). Plaintiff's termination on or about December 8, 2021, certainly constitutes an adverse employment action and satisfies the second element of a prima facie retaliation claim.

With respect to the third and final element of her retaliation claim, Plaintiff must allege facts demonstrating a causal link between her protected activity and her termination. *See Barker v. Missouri Dep't of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008) (listing three elements of prima facie case of retaliation). Upon careful review, the court finds that Plaintiff has failed to allege facts suggesting a link between her contact with the NEOC and her termination on or about December 8, 2021. First, Plaintiff alleges no facts to suggest that Oriental Trading knew of Plaintiff's contact with the NEOC on or about November 23, 2021, or even what Plaintiff's contact with the NEOC entailed. *See Buettner*, 216 F.3d at 715 ("A plaintiff must show the employer had actual or constructive knowledge of the protected activity in order to establish a prima facie case of retaliation."). There are also no facts alleged to show any causal connection between Plaintiff's contact with the NEOC on November 23, 2021, and her termination on December 8, 2021. The approximately two weeks between Plaintiff's contact with the NEOC and her termination, on its own, is insufficient to suggest a causal connection between the two events. *Id.* at 716 ("Generally, however, more than a temporal connection between protected activity and an adverse employment action is required to show a genuine factual issue on retaliation exists.") (citing *Kiel v. Select Artificials*, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999)). Rather, the facts alleged suggest only that Plaintiff's termination was preceded immediately by the December 8, 2021, incident where Marc assaulted Plaintiff. As the

10

court found on initial review, Plaintiff's allegations fail to suggest any link between Marc's altercation with Plaintiff and Plaintiff's race or that the mistreatment she experienced was of such an extreme nature as to be actionable under Title VII. While the circumstances of Plaintiff's termination, as alleged, appear unfair, Plaintiff fails to allege facts to state a plausible claim that she was terminated in retaliation for engaging in protected activity in violation of Title VII.

## V. CONCLUSION

Plaintiff's Amended Complaint fails to state a plausible claim for relief for race-based discrimination, harassment, or retaliation and is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2). The court will dismiss this matter without prejudice and without further leave to amend. *See Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021) (district court did not abuse its discretion in dismissing plaintiff's complaint where court allowed plaintiff to amend his complaint and plaintiff "was still unable to plead adequate claims"); *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012) (district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice).

IT IS THEREFORE ORDERED that:

1.  Plaintiff's Motion to Extend, Filing 11, is denied as moot.

2.  This matter is dismissed without prejudice for failure to state a claim upon which relief may be granted.

3.  A separate judgment will be entered.

Dated this 15th day of March, 2024.

BY THE COURT:

_____
John M. Gerrard
Senior United States District Judge

12